No. 12-56858


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EDWARD KHO
Plaintiff - Appellant,

vs.

WELLS FARGO & COMPANY, AKA Wells Fargo Bank, N.A.,
Defendant - Appellee


Appeal From the United States District Court
Central District of California
Case No. SACV 12-0847 DOC (AGRx)

**APPELLANT'S OPENING BRIEF**

PATRICIA RODRIGUEZ (BAR NO. 270639)
RODRIGUEZ LAW GROUP, INC.
1961 W. Huntington Drive, Suite 201
Alhambra, California 91801
Phone:  (626) 888-5206
Fax:  (626) 282-0522
Attorneys for Appellant


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF JURISDICTION ....................................................... 1

II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ............... 2

III.  STATEMENT OF THE CASE ............................................................ 3

IV.   STATEMENT OF THE FACTS ......................................................... 4

V.    SUMMARY OF THE ARGUMENT ................................................... 7

VI.   LEGAL ARGUMENTS ...................................................................... 8

      A. STANDARD OF REVIEW ................................................................. 8

      B. THE DISTRICT COURT SHOULD NOT HAVE FOUND
         FEDERAL DIVERSITY JURISDICTION IN THIS
         MATTER…………………………………………….................... 8
              1.    Statutory Backdrop ........................................................ 9

              2.    Case Law Regarding National Bank Citizenship ...... 9

              3.    Schmidt........................................................................ 11

              4.    Ninth Circuit Precedent ...............................................16

              5.    Other Circuit Court Authority ................................. 22

      C. THE DISTRICT COURT ERRED IN FINDING "HOLA"

         PREEMPTS PLAINTIFF'S CAUSES OF ACTION .................. 25

VII.  CONCLUSION AND RELIEF SOUGHT .......................................... 30

VIII. STATEMENT OF RELATED CASES …………………………. 30

## TABLE OF AUTHORITIES

<u>Cases</u>

Adams v. Wells Fargo Bank, N.A.,No.
C–13–0256 MCE, 2013 WL 1907746, at *2 (E.D.Cal. May 7, 2013)...................18

Aguayo v. U.S. Bank,
653 F.3d 912 (9th Cir.2011)..............................................................................8, 29

American Surety Co. of N.Y. v. Bank of Cal.,
44 F.Supp. 81, 82 (D.Or.1941).................................................................20

American Surety Co. v. Bank of California
133 F.2d 160, 162 (9th Cir.1943)...........................................................15

Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.,
465 F.2d 489, 492 (9th Cir.1972)...........................................................16

Black and White Taxicab & Transfer Co. v. Brown and Yellow Taxicab &
Transfer Co.,
276 U.S. 518, 522–525, 48 S.Ct. 404, 72 L.Ed. 681 (1928)...................20

Cesar v. Wells Fargo Bank, N.A.,
No. C–12–1614 MCE, 2012 WL 5289332, at *2 (E.D.Cal. Oct.23, 2012).............18

Fed. Intermediate Credit Bank of Columbia, S.C. v. Mitchell,
277 U.S. 213, 215–16, 48 S.Ct. 449, 72 L.Ed. 854 (1928).....................12

Federal Intermediate Credit Bank of Columbia, S.C. v. Mitchell,
277 U.S. 213, 216, 48 S.Ct. 449, 72 L.Ed. 854 (1928)...........................24

Firstar Bank, N.A. v. Faul,
253 F.3d 982 (7th Cir.2001)...................................................................21

Firstar Bank, N.A. v. Faul,
253 F.3d 982, 993 (7th Cir.2001) ..........................................................10

Gen. Motors Corp. v. Abrams,
897 F.2d 34, 41–42 (2d Cir.1990).........................................................29

Gosal v. Wells Fargo Bank, N.A.,
No. C–12–2024 GEB, 2012 WL 4961696, at *1 (E.D.Cal. Oct.15, 2012)..............18

Grace v. Wells Fargo Bank, N.A.,
No. C–12–2050 GPC, 2013 WL 663169, at *4 (S.D.Cal. Feb.21, 2013)..............18

Hermann v. Edwards,
238 U.S. 107, 117–18, 35 S.Ct. 839, 59 L.Ed. 1224 (1915)...................................24

Homedics, Inc. v. Valley Forge Ins.
Co.315 F.3d 1135, 1138 (9th Cir.2003)....................................................................8

Horton v. Bank One, N.A.
,387 F.3d 426 (5th Cir.2004)..................................................................................21

Hun Gim v. Wells Fargo Home Mortg. Inc.,
No. C–12–5686 DDP, 2012 WL 3848659, at *1 (C.D.Cal. Sept.5, 2012)............18

Lopez v. Wash. Mut. Bank,
302 F.3d 900, 903 (9th Cir.2002)..............................................................................8

McClellan v. Chipman
(1896) 164 U.S. 347, 357 [41 L.Ed. 461 , 465, 17 S.Ct. 85...................................28

Medtronic, Inc. v. Lohr,
518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996))...............................26

Mercantile National Bank at Dallas v. Langdeau,
371 U.S. 555, 565–66, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)...................................12

Miller v. Gammie,
335 F.3d 889, 900 (9th Cir.2003) (en banc)...........................................................17

National State Bank, Elizabeth, N.J. v. Long,
630 F.2d 981............................................................................................................28

Nw. Envtl. Def. Ctr. v. Brown,
640 F.3d 1063, 1069 (9th Cir.2011).........................................................................8

Ortiz v. Wells Fargo Bank, N.A.
No. C–13–0060 GPC, 2013 WL 1702790, at *4 (S.D.Cal. Apr.19, 2013)............18

Perdue v. Crocker National Bank
(1985) 38 Cal.3d 913, 933...................................................................................28

Rodriguez v. Wells Fargo Bank, Nat'l Ass'n,
No. C–12–469 BEN, 2012 WL 1940572, at *4 n. 4 (S.D.Cal. May 25, 2012).......19

Shirk v. Wells Fargo Bank, N.A.
No. C–12–1118 IEG, 2012 WL 6951901, at *1–2 (S.D.Cal. July 17, 2012)..........18

Singer v. Wells Fargo Bank, N.A.,
No. C–12–801 JVS, 2012 WL 2847790, at *3–5 (C.D.Cal. July 11, 2012)...........19

Taheny v. Wells Fargo Bank, N.A.,
878 F.Supp.2d 1093 (2012)...................................................................................17

Toumajian v. Frailey
135 F.3d 648, 652 (9th Cir.1998)............................................................................8

U.S. Nat'l Bank v. Hill,
434 F.2d 1019, 1020 (9th Cir.1970).......................................................................16

Wachovia Bank v. Schmidt
546 U.S. 303, 307, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006)..................................10

Wells Fargo Bank, N.A. v. WMR e-Pin,LLC,
653 F.3d 702, 709 (8th Cir.2011).........................................................................10

Wells Fargo Bank, N.A.,
No. C–11–2452 BEN, 2013 WL 100323, at *4 n. 4 (S.D.Cal. Jan.4, 2013)..........18

World Trade Center Properties, L.L. C. v. Hartford Fire Ins. Co.,
345 F.3d 154 (2d Cir.2003)....................................................................................9

Wyeth v. Levine,
555 U.S. 555, 129 S.Ct. 1187, 1194, 173 L.Ed.2d 51 (2009).................................26

# CODES AND SATUTES

12 C.F.R. § 560.2(c) ................................................................27

12 U.S.C. 1462a(f); ................................................................27

28 U.S.C. § 1291 ................................................................1, 8

28 U.S.C. § 1332 ................................................................1, 15, 22, 23

28 U.S.C. § 1332(c)(1) ................................................................9

28 U.S.C. §§ 1332(d)(2) ................................................................1, 8

28 U.S.C. § 1348 ................................................8, 9, 10, 11, 13, 14, 15, 16, 19, 22, 23

28 U.S.C. § 1441(a) ................................................................1, 8

28 U.S.C. § 1441(b) ................................................................9

28 U.S.C. §1441 ................................................................1

Act of Feb. 25, 1863, § 59, 12 Stat. 681 ................................................................11

Act of July 12, 1882, § 4, 22 Stat. 163 ................................................................11

Act of June 25, 1948, 62 Stat. 933 ................................................................13

Act of Mar. 3, 1887, § 4, 24 Stat. 554–55 (the "1887 Act") ................................................................12

Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1091–93 (the "1911 Act") ................................................................13

Business and Professions Code §17200 ................................................................3

Federal Rules of Appellate Procedure Rule 4(a)(1)(A) ................................................................2

H. Comm. on the Judiciary, 72d Cong. 52 (1932) ................................................................2

# I.     STATEMENT OF JURISDICTION

(a) Subject Matter Jurisdiction was disputed in the District Court.  The District Court has/had no subject matter jurisdiction over this case.  It is conceded that Plaintiff's claims are entirely derived out of California statutory and common law causes of action filed originally in state court.  Defendants removed this action from state court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 1441, stating that it is a citizen of South Dakota while Plaintiff was a citizen/resident of California.  Plaintiff opposed jurisdiction stating that both he and Defendant were citizens of California, Plaintiff because he is an admitted resident of California and Defendant because its principal place of business was California.

(b) This case presents an appeal from the judgment of dismissal following the district court's granting of a motion to dismiss.  The district court had jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1441(a).  The Ninth Circuit Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291.  The JUDGMENT OF DISMISSAL WITH PREJUDICE filed by the District Court confirmed the Order granting Defendant's Motion to Dismiss EOR1, p. 7, (Dkt. 13) and the Order dismissing the entire action with prejudice for failure to timely file an amended pleading (Dkt. 15).  Accordingly, it was ordered, adjudged, and decreed that the district court

action was dismissed with prejudice with Plaintiff Edward Kho to take nothing from defendant Wells Fargo.

   (c)  The district court entered the Judgment of Dismissal with Prejudice to which Plaintiff appeals was filed and entered on September 19, 2013.  The Notice of Appeal was filed and entered on October 11, 2013.  EOR1, p. 1.  The Notice of Appeal was timely under Federal Rules of Appellate Procedure Rule 4(a)(1)(A).  Plaintiff/Appellant filed his Notice of Appeal, required under Rule 3, twenty-two (22) days from the September 19, 2013, the date upon which the Judgment of Dismissal with Prejudice was field, well within 30 days prescribed under FRAP 4(a)(1)(A).


## II.        STATEMENT OF ISSUES PRESENTED FOR REVIEW

        The issues to be presented for review are as follows:

   (1)      Is, for purposes of diversity jurisdiction, a national bank a citizen solely of the state in which its main office is located, as identified in its articles of association (the "state of association"), or is it also a citizen of the state in which its principal place of business is located?

   (2)      Does HOLA preempt the entirely state causes of action of: 1) fraud; (2) cancellation of contract; (3) violation of the California Business and

Professions Code; (4) violation of covenant of good faith and fair dealing; (5)

declaratory relief; and (6) violation of California's Finance Lenders Law?

(3)      Could Plaintiff conceivably amend Plaintiff's causes of action, except

for the third cause of action for violation of Business & Professions Code § 17200,

to be sufficient under Federal Rules of Civil Procedure, Rule 12(b)(6)?


### III.    STATEMENT OF THE CASE

On June 15, 2006, Plaintiff Edward Kho ("Plaintiff") applied for a refinance

loan with World Savings Bank, FSB, ("WSB") for the property located at 6

Calabria Lane, Foothill Ranch, California 92610. EOR2, p. 94, Removal Ex. A

("Compl.") (Dkt.1) at ¶ 10. WSB qualified Plaintiff for a thirty year adjustable rate

loan and subsequently executed the loan agreement. Id. Plaintiff's stated income on

the loan application was $10,250 although Plaintiff actually made less than $7,000.

Id. at ¶ 13. Plaintiff alleges that he never stated such an inflated income amount nor

confirmed that amount. Id. Plaintiff alleges the terms of the loan, which allowed

for negative amortization and variable and "teaser" interests rates, "set the Plaintiff

up for certain default and the ruination of his credit and ability to purchase real

property again," and Defendant Wells Fargo, as successor-in-interest to WSB,

"was in a position to tell Plaintiff of the misrepresentations of income and

amortization and interest rate terms but did not disclose any of these Id. at ¶ 10-14.

In 2007, WSB changed its name to Wachovia Mortgage, FSB. EOR2, p. 74. On November 1, 2009, Wachovia Mortgage was converted to Wells Fargo Bank Southwest, N.A. and thereby merged into Defendant Wells Fargo Bank, N.A. Id.

When Plaintiff fell behind in his payments in 2012, he sought assistance from Defendant Wells Fargo "to resolve his impending default and obtain a payment that he could actually afford." Id. at ¶ 16. Defendant Wells Fargo "refused to offer any financial relief or even evaluate Plaintiff's financial situation." Id. Though Plaintiff has been threatened with foreclosure, the home has not been sold at this time and Plaintiff resided in it at the time the Complaint was filed. Id. at ¶¶ 1, 16.

Plaintiff filed the Complaint on April 18, 2012, alleging six causes of action under state law for: (1) fraud; (2) cancellation of contract; (3) violation of the California Business and Professions Code; (4) violation of covenant of good faith and fair dealing; (5) declaratory relief; and (6) violation of California's Finance Lenders Law. Compl. (Dkt.1). Defendant Wells Fargo filed a Motion to Dismiss and a Motion to Strike on June 1, 2012, primarily citing preemption of Plaintiff's entire complaint on the basis of HOLA. EOR2, p. 43, Mot. Dismiss (Dkt. 5); Mot. Strike (Dkt. 6).

## IV.    STATEMENT OF THE FACTS

Plaintiff Edward Kho initially brought this action in state court against the successor in interest to the lender for their property at  6 Calabria Lane, Foothill Ranch, California 92610 (the "Property"), Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), based on Defendant's conduct surrounding issuance and servicing of the note for the Property. See EOR2, p. 94, Compl., Dkt 1 Ex. A. Plaintiffs assert state law claims for (1) fraud; (2) cancellation of contract; (3) violation of the California Business and Professions Code; (4) violation of covenant of good faith and fair dealing; (5) declaratory relief; and (6) violation of California's Finance Lenders Law. Compl. (Dkt.1).

After Defendant removed the case to this Court on the basis of diversity jurisdiction, it brought the instant motion to dismiss. (See Mot. to Dismiss, Dkt. 4). Plaintiff opposed the Motion to Dismiss citing both lack of diversity jurisdiction and that Plaintiff's claims are not preempted by the Home Owners' Loan Act ("HOLA"). (See EOR2, p. 15, Opp. to Mot., Dkt. 9). The District Court granted Defendant's Motion to Dismiss citing that diversity jurisdiction did exist because Defendant was not a citizen of California and all of Plaintiff's state law claims were preempted by HOLA. See Order, Dkt. 13.

This case stems from an adjustable rate mortgage note for $523,483 (the "Note") obtained by Plaintiffs in June 2006. See Removal, Ex A, Compl. ¶ 12 .

Plaintiffs obtained the loan through World Savings Bank, FSB, ("WSB").

Defendant Wells Fargo and is the successor in interest to WSB. Wells Fargo is a

national bank with the main office identified in its articles of association in South

Dakota, but its principal place of business in California. See EOR2, p.74, Removal,

Dkt. 1, Ex. E art II; EOR2, p. 15, Opp'n to MTD Dkt 9 (arguing Wells Fargo's

principal place of business is in California); EOR2, p. 1, Def.'s Reply to Mot. to

Remand ("Def.'s Reply"), Dkt. 11 (not disputing assertion that California is

principal place of business).

Plaintiffs' claims are based on two general sets of allegations. First, the bulk

of the complaint is devoted to Plaintiffs' allegations that Wells Fargo took part in

various deceptive practices that induced Plaintiffs to sign the Note, such as failing

to disclose that the loan was designed to cause negative amortization to occur,

failing to disclose that the initial interest rate was only temporary, and failing to

disclose that unpaid interest would be added to the principal of the loan. See

Compl. ¶¶ 10-14; 17-21 (fraud claim), 27-35(UCL claim), 36-41(breach of

covenant claim). Wells Fargo represented that the minimum monthly payments

would escalate in a certain manner when in fact the interest rate and payments

could change much sooner and drastically and WELLS FARGO used an inflated

income amount on his loan application -without his knowledge to qualify Plaintiff

over the course of the loan. Id. ¶¶ 10-13. No one explained any of the loan

documents or terms at issue to Plaintiff. Id. ¶ 14. As a result of these representations and omissions, Plaintiffs executed the Note. Id. ¶ 10-16. Plaintiffs did not realize that the representations made at the time they executed the Note were false until 2012, when they sought advice in an attempt to modify their loan to reasonable terms where he was met with no financial review. Id. ¶ 16. All of these misrepresentations amount to Plaintiff's fraud cause of action.

Second, Plaintiffs' UCL and breach of covenant causes of action include allegations that Wells Fargo has misapplied, or failed to apply Plaintiffs' payments; tried to collect and/or collected various improper fees, costs and charges." EOR2, p. 94, Compl. ¶¶ 68, 121.

## V.    SUMMARY OF THE ARGUMENT

Wells Fargo Bank, as successor in interest of WSB, should be deemed a resident of both the state of formation and its principal place of business.  This decision would render jurisdictional parity for corporations and national banks.

Schmidt is good law but markedly distinguishable as applied to Wells Fargo's principal place of business.

American Surety is good law and should be followed by the district court.

HOLA does not preempt Appellant's entirely state law claims enforcing contracts and the right to collect debts

7

## VI.    LEGAL ARGUMENTS

### A.    STANDARD OF REVIEW

This case presents an appeal from the judgment of dismissal following the district court's granting of a motion to dismiss.  The district court had jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1441(a).  The Ninth Circuit Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291. The Ninth Circuit Court of Appeals reviews de novo a district court's dismissal for failure to state a claim under Federal Civil Rule 12(b)(6). Nw. Envtl. Def. Ctr. v. Brown, 640 F.3d 1063, 1069 (9th Cir.2011). "Questions of statutory interpretation are reviewed de novo, as are questions of preemption." Lopez v. Wash. Mut. Bank, 302 F.3d 900, 903 (9th Cir.2002) (citations omitted); see also Toumajian v. Frailey, 135 F.3d 648, 652 (9th Cir.1998) ("[P]reemption is also a question of law reviewed de novo."). A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Homedics, Inc. v. Valley Forge Ins. Co., 315 F.3d 1135, 1138 (9th Cir.2003).  Aguayo v. U.S. Bank, 653 F.3d 912 (9th Cir.2011).

## B.    THE DISTRICT COURT SHOULD NOT HAVE FOUND FEDERAL DIVERSITY JURISDICTION IN THIS MATTER

1.    **Wells Fargo as successor in interest to WSB is governed under the 28 U.S.C. § 1348 for diversity jurisdiction purposes**

In order for the District Court to retain jurisdiction over a case which does not present a federal question there must be complete diversity between the parties. See 28 U.S.C. § 1441(b).  Normally, corporate citizenship is governed by 28 U.S.C. § 1332(c)(1), which provides that a corporation is a citizen of both its state of incorporation and, since 1958, the state in which its principal places of business is located.  However, national banks, such as Defendant Wells Fargo, are subject to a separate jurisdiction provision, 28 U.S.C. § 1348 ("§ 1348"), which provides, in full, that

> "The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
> *All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located*."  28 U.S.C. § 1348 (emphasis added).

However, the statute does not define where national banks are "located" for purposes of jurisdiction and this definition is not obvious.

2.    **National Bank Citizenship Case Law**

9

Courts, in interpreting the last phrase in § 1348 have not come down on this issue squarely. Compare World Trade Center Properties, L.L. C. v. Hartford Fire Ins. Co., 345 F.3d 154 (2d Cir.2003) (a national bank is "a citizen of every state in which it has offices."), abrogated by Wachovia Bank v. Schmidt, 546 U.S. 303, 309 (2006), with Firstar Bank, N.A. v. Faul, 253 F.3d 982, 993 (7th Cir.2001) (national banks are "located" in "the state where the bank's principal place of business is found and the state listed on its organization certificate."), and with Wells Fargo Bank, N.A. v. WMR e-Pin, LLC, 653 F.3d 702, 709 (8th Cir.2011) (a national bank is "located" only in the state of its main office).

In Wachovia Bank v. Schmidt, 546 U.S. 303, 307, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006), the Supreme Court rejected an interpretation of § 1348 that national banks are citizens of every state in which they have a *branch* and instead determined "that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." However, the Court did not reach the question of whether a national bank may also be a citizen of the state in which its principal place of business is located, specifically leaving that question unresolved. See id. at 317 n. 9. Schmidt left open the door to either of two interpretations: (1) A national bank is a citizen of only its state of association (the state in which its main office is listed in its articles of association); or (2) A national bank is a citizen of both its state of association and

10

the state in which its principal place of business is located. See WMR e-Pin, 653 F.3d at 707 (Schmidt did not consider whether a national bank is also a citizen of the state of its principal place of business). With this ambiguity Appellant turns to the reasoning in Schmidt, the various lower court cases that have considered this issue, and legislative history and legislative policy underlying § 1348 and related statutes to determine which of these two interpretations is correct.

### 3.   U.S. v. Schmidt

In Schmidt, the lower court had found that a national bank is a citizen of every state in which it has established a branch. See 546 U.S. at 307. The Supreme Court rejected that interpretation and instead found that national banks are citizens of their states of association. In so holding, Schmidt first looked to the legislative history behind § 1348. As set forth in Schmidt, Congress authorized national banks in 1863, providing that suits in which a national bank was a party could automatically be brought in all federal courts. See id. at 309–10 (citing Act of Feb. 25, 1863, § 59, 12 Stat. 681). In contrast, state banks and other state-incorporated entities could only access federal courts on the basis of diversity of citizenship or federal question jurisdiction. See id. at 310.

National banks' automatic qualification for federal jurisdiction ended in 1882, when Congress passed a bill providing for jurisdictional parity with state-chartered banks, such that jurisdiction would be "the same as, and not other than,

the jurisdiction for suits by or against" state banks from the state where national banks were doing business. See id. (quoting Act of July 12, 1882, § 4, 22 Stat. 163). Congress thus established parity between national and local banks for purposes of jurisdiction.

In 1887, Congress again revised the law governing national banks, inserting, for the first time, the current language defining where a national bank was "located" for diversity purposes:

[A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State. See id. at 310–11 (quoting Act of Mar. 3, 1887, § 4, 24 Stat. 554–55 (the "1887 Act")). Despite the removal of language explicitly equating national banks to state banks for jurisdictional purposes, the 1887 Act still " 'sought to limit ... the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks [were] so limited.' " Id. at 311 (quoting Mercantile Nat'l Bank at Dallas v. Langdeau, 371 U.S. 555, 565–66, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)) (emphasis added). See also Fed. Intermediate Credit Bank of Columbia, S.C. v. Mitchell, 277 U.S. 213, 215–16, 48

12

S.Ct. 449, 72 L.Ed. 854 (1928) ("national banks were by the acts of 1882 and 1887 put on the same basis in respect of jurisdiction as if they had not been organized under an act of Congress") (emphasis added).  In short, in the 1887 Act, Congress retained parity between national and local banks in accessing the jurisdiction of the federal courts.

In the Judicial Code of 1911, Congress combined two formerly discrete provisions regarding national banks, but kept without revision the language adopted in 1887 indicating that national banks would "be deemed citizens of the States in which they are respectively located." See Schmidt, 546 U.S. at 311 (citing Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1091–93 (the "1911 Act")); see also Mitchell, 277 U.S. at 216 (1911 Act was "in substance a re-enactment of the earlier provisions in respect of such jurisdiction."). Nothing suggests Congress intended to breach the parity between national and local banks.

In 1948, Congress adopted the current statute governing national bank citizenship for purposes of diversity, 28 U.S.C. § 1348. Section 1348 maintains the same language for national bank citizenship for purposes of diversity jurisdiction as contained in the predecessor acts of 1887 and 1911, providing that "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." See Schmidt, 546 U.S. at 311–12 (citing Act of June 25, 1948, 62 Stat.

13

933) (emphasis added).  Notably, the Court in Schmidt did not find that the jurisdictional parity established in 1882 no longer applied under § 1348.

After setting forth the historical development of § 1348 and then rejecting several rationales for recognizing national bank citizenship based on every state in which a national bank has a branch, the Court compared national banks to state banks and non-banking corporations to determine that national banks are citizens of their states of association. See id. at 313–17. It noted that, unlike the rule set forth in the appellate court's decision, "this Court's reading of the venue provision in [Citizens & Southern Nat'l Bank v.]  Bougas effectively aligned the treatment of national banks for venue purposes with the treatment of state banks and corporations." Id. at 316–17 (emphasis added). The Court repeatedly expressed concern that treating national banks as citizens of every state in which they conduct business would "render [ ] national banks singularly disfavored corporate bodies with regard to their access to federal courts." Id. at 319; see also id. at 307 ("access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state incorporated entities" if national banks were found to be citizens of every state with a branch); id. at 317 (such a reading "severely constricts national banks' access to diversity jurisdiction as compared to the access available to corporations generally"). Nowhere does it suggest that national banks should be treated as only citizens of their states of

14

association, which would effectively render them "**singularly [ ] favored corporate bodies with regard to their access to federal courts**." (**Emphasis added**.) Thus, while the Court did not address the precise issue raised in the instant case, the analytical thrust behind the Supreme Court's holding in Schmidt was to preserve parity between national banks on the one hand, and local banks and corporations on the other.

In footnote nine of its opinion, the Court did highlight the difference between the language used to grant diversity jurisdiction over a corporation under 28 U.S.C. § 1332—that it "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"—and national banks under § 1348 which are "citizens of the States in which they are respectively located" noting the latter does not mention principal place of business. Id. at 317 n. 9. However, the Court did not conclude that the difference in language was meant to overturn a decades long policy of jurisdictional parity. Rather, the Court refrained from deciding an issue not before it, recognizing that "[t]he absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide." Id.

**4.    <u>Ninth Circuit Precedent</u>**

15

Prior to Schmidt, the Ninth Circuit held in American Surety Co. v. Bank of California, 133 F.2d 160, 162 (9th Cir.1943), that "the 'States in which they (national banking associations) are respectively located' are those states in which their principal places of business are maintained" and thus "[t]he trial court was right in holding that defendant is a citizen only of the state in which its principal place of business is located." The statute at issue contained the same language as currently in § 1348. Thus, literally read, American Surety, if still good law, is binding on this Court and resolves the question left open in Schmidt. Moreover, apart from its specific holding, the central teaching of American Surety is its reliance on "a close analogy between [a national] bank and a corporation national in scope," i.e. parity. Id. at 162. That teaching is consistent with Schmidt.

Importantly, American Surety has not been overruled by any subsequent opinion of the Ninth Circuit. In fact, the Ninth Circuit has twice cited American Surety with approval. See U.S. Nat'l Bank v. Hill, 434 F.2d 1019, 1020 (9th Cir.1970); Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co., 465 F.2d 489, 492 (9th Cir.1972).

Wells Fargo advanced several arguments for avoiding American Surety's holding that principal place of business may serve as grounds for a national bank's citizenship: (1) that Schmidt and American Surety each advance exclusive tests for national bank citizenship, and are thus irreconcilable; (2) that American Surety did

16

not consider the National Bank Act for examples of how "located" is used and is thus no longer good law on this point; (3) that American Surety did not consider whether a national bank could be a citizen of a state where its principal place of business is located in addition to a state where its main office is located; (4) that the analogy to corporations in American Surety was necessary only due to the lack of case law defining "located"; and (5) that American Surety relied on a misstatement of the law. See Removal p. 3- 13.

American Surety remains good law in this Circuit. In Taheny v. Wells Fargo Bank, N.A., 878 F.Supp.2d 1093 (2012), Judge Karlton's extensive and well-reasoned opinion disposed of the first argument, finding that American Surety remained good law.  As pointed out by Taheny, " 'where intervening Supreme Court authority is clearly irreconcilable with ... prior circuit court authority ... [,] district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of [the circuit court] as having been effectively overruled.' " Id. at 1100 (quoting Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc)). Unless Schmidt is "clearly irreconcilable with American Surety, the latter still binds this Court. The two decisions are not clearly irreconcilable. As Taheny found, " Schmidt and American Surety each identify a different possibility for citizenship—main office or principal place of business—without excluding the other possibility." Id. at 1100. In fact, both opinions reached

17

their conclusions by rejecting the interpretation that a national bank could be a citizen of every state in which it maintains a branch. See id. In so holding, Schmidt left open the possibility that a national bank could be deemed a citizen of the state of its principal place of business, a result consistent with American Surety. American Surety likewise did not rule out the possibility that citizenship could be located in the state of the national bank's main office as Schmidt held—that question was not presented in American Surety.

The Court should join the ranks of an increasing number of courts within the Ninth Circuit holding American Surety remains binding precedent. See, e.g., Adams v. Wells Fargo Bank, N.A., No. C–13–0256 MCE, 2013 WL 1907746, at *2 (E.D.Cal. May 7, 2013); Ortiz v. Wells Fargo Bank, N.A., No. C–13–0060 GPC, 2013 WL 1702790, at *4 (S.D.Cal. Apr.19, 2013); Grace v. Wells Fargo Bank, N.A., No. C–12–2050 GPC, 2013 WL 663169, at *4 (S.D.Cal. Feb.21, 2013); Bickoff v. Wells Fargo Bank, N.A., No. C–11–2452 BEN, 2013 WL 100323, at *4 n. 4 (S.D.Cal. Jan.4, 2013); Cesar v. Wells Fargo Bank, N.A., No. C–12–1614 MCE, 2012 WL 5289332, at *2 (E.D.Cal. Oct.23, 2012); Gosal v. Wells Fargo Bank, N.A., No. C–12–2024 GEB, 2012 WL 4961696, at *1 (E.D.Cal. Oct.15, 2012); Hun Gim v. Wells Fargo Home Mortg. Inc., No. C–12–5686 DDP, 2012 WL 3848659, at *1 (C.D.Cal. Sept.5, 2012); Shirk v. Wells Fargo Bank, N.A., No. C–12–1118 IEG, 2012 WL 6951901, at *1–2 (S.D.Cal. July 17,

2012); Singer v. Wells Fargo Bank, N.A., No. C–12–801 JVS, 2012 WL 2847790, at *3–5 (C.D.Cal. July 11, 2012); Rodriguez v. Wells Fargo Bank, Nat'l Ass'n, No. C–12–469 BEN, 2012 WL 1940572, at *4 n. 4 (S.D.Cal. May 25, 2012).

As American Surety has not been overruled by the Supreme Court or the Ninth Circuit, Wells Fargo's remaining arguments suggesting that American Surety was wrongly decided are inapposite. Even if the Court were to entertain these arguments on the merits and disregard the binding effect of American Surety, Wells Fargo's arguments are not persuasive.  As for Wells Fargo's argument that American Surety failed to consider the National Bank Act (which establishes, e.g., venue for suits involving national banks), any such failure is immaterial. Although the National Bank Act uses "located" to mean "the site of the banking association's designated main office" and "refers to or includes branch offices," (but not principal place of business), as Schmidt pointed out, "the term 'located,' as it appears in the National Bank Act, has no fixed, plain meaning." 546 U.S. at 313–14. Moreover, § 1348 is found in the Judicial Code and Judiciary Act, not the National Bank Act; there is no compelling basis for using the National Bank Act as an interpretive tool in analyzing § 1348. See Horton v. Bank One, N.A., 387 F.3d 426, 433–34, 435 (5th Cir.2004).  Indeed, Schmidt held that the National Bank Act's provision regarding venue cannot be read as in pari materia with § 1348's prescription for jurisdiction. 546 U.S. at 315–16.

19

Wells Fargo has not explained why it is material that American Surety did not consider whether a national bank could be a citizen of both its state of association and the state in which its principal place of business is located. The court in American Surety, like in Schmidt, was presented with a situation wherein the national bank's principal place of business and main office were located in the same state. See American Surety Co. of N.Y. v. Bank of Cal., 44 F.Supp. 81, 82 (D.Or.1941) (underlying case). As in Schmidt, the court in American Surety rejected the argument that a national bank could be a citizen of every state in which it maintained a branch office. There was no occasion to consider whether a national bank may also be a citizen of its state of association.

There is some support for Wells Fargo's argument that, at the time American Surety was decided, it wrongfully assumed that corporate citizenship was based on principal place of business. See Removal p 7-9. As explained by the Supreme Court recently in Hertz Corp. v. Friend, "[i]n 1928 this Court made clear that the 'state of incorporation' rule was virtually absolute" such that "a corporation closely identified with State A could proceed in a federal court located in that State as long as the corporation had filed its incorporation papers in State B, perhaps a State where the corporation did no business at all." 559 U.S. 77, 130 S.Ct. 1181, 1188 (2010) (citing Black and White Taxicab & Transfer Co. v. Brown and Yellow Taxicab & Transfer Co., 276 U.S. 518, 522–525 (1928)). Thus, the conclusion in

American Surety that "[t]he citizenship of a corporation is fixed by its principal place of business," appears to have been a misstatement of the law at the time. However, regardless of whether American Surety correctly identified the test for determining corporate citizenship as of 1948, the thrust of its analysis was predicated on jurisdictional parity between national banks and corporations; that rational was correct and consistent with Schmidt. The central teaching of American Surety remained intact even after Schmidt.

**5.    <u>Other Circuit Court Authority</u>**

Aside from the Ninth Circuit in American Surety, three other circuits have addressed the question of national bank citizenship: the Fifth, Seventh, and Eighth Circuits. See Firstar Bank, N.A. v. Faul, 253 F.3d 982 (7th Cir.2001); Horton v. Bank One, N.A., 387 F.3d 426 (5th Cir.2004); Wells Fargo Bank, N.A. v. WMR e-Pin, LLC, 653 F.3d 702 (8th Cir.2011). Of these opinions, both the Seventh Circuit's opinion in Firstar and then the Fifth Circuit's opinion in Horton set forth persuasive arguments for recognizing both principal place of business and state of association as bases for national bank citizenship.

In Firstar Bank, the Seventh Circuit applied the principle of jurisdictional parity in holding that a national bank is a citizen of both the state in which its principal place of business is located and its state of association. After determining that the ordinary definition of "located" does not provide a clear answer, it

21

considered the subject matter to which it refers national banks. 253 F.3d at 987. It

concluded that "a national bank appears to be analogous in most respects to a

corporation rather than some other kind of business organization, and thus one

would expect that 'located' in the jurisdictional context means the same thing for a

bank as it does for a corporation." Id. at 988. "While a national bank is not

incorporated in a state, the organization certificate ... serves a function similar to a

certificate of incorporation." Id. at 993–94. Next, it concluded that when § 1348

was enacted in 1948, there was a backdrop of sixty years of judicial interpretation

assuming "that national banks were to have the same access to the federal courts as

state banks and corporations," yet "[n]o language in the statute indicate[d] a

rejection of this existing construction." Id. at 988. It directly confronted the

argument against interpreting § 1348 in light of § 1332 (which for the first time

defined corporate citizenship to include principal place of business), enacted ten

years later in 1958; the court noted that "the 'classic judicial task of reconciling

many laws enacted over time, and getting them to 'make sense' in combination,

necessarily assumes that the implications of a statute may be altered by the

implications of a later statute.' " Id. at 993 n. 5 (quoting U.S. v. Fausto, 484 U.S.

439, 453 (1988)).

In Horton, the Fifth Circuit largely reiterated the reasoning from Firstar. See

Horton, 387 F.3d at 429. Ultimately, it concluded, after rejecting rationales for

recognizing citizenship for every state in which a national bank maintains a branch, which "the definition of 'located' is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association." Id. at 432–36.

Firstar and Horton are consistent with Schmidt and support the validity of the Ninth Circuit's holding in American Surety. On the other hand, in WMR e-Pin the Eighth Circuit found that language of jurisdictional parity had been progressively stripped from the law from 1887 to 1948, thereby suggesting that Congress did not intend § 1348 to continue to be anchored to the evolving definition of corporate citizenship, but rather to be frozen at the then prevailing understanding of corporate citizenship in 1948 when citizenship was based solely on the state of incorporation. See 653 F.3d at 708–09. WMR e-Pin thus concluded that the expansion of principal place of business test for corporate citizenship in 1958 in § 1332 did not apply to § 1348. See id. Moreover, the Court concluded its interpretation of § 1348 comported with the position of the Office of the Comptroller of the Currency ("OCC"). See id. at 709–10.

However, WMR e-Pin's analysis gives short shrift to the overarching policy of parity established by Congress and applied by federal courts from 1882 to the present; it also overstates the OCC's position on this issue. The Supreme Court has repeatedly reaffirmed jurisdictional parity at each stage of statutory evolution,

23

notwithstanding removal of explicit references equating national to local banks for jurisdictional purposes. First, the 1882 Act indisputably established parity between national banks and their state counterparts. See WMR e-Pin, 653 F.3d at 706. Second, although the 1887 Act removed the direct comparison to state banks, instead comparing national banks to "individual citizens of the same State," the Court in Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 565–66 (1963), recognized that the 1887 Act, like the 1882 Act, was designed "to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited." Third, although the 1911 Act removed the clause comparing national banks to other entities entirely, leaving only the language that they "be deemed citizens of the States in which they are respectively located," the Supreme Court recognized in Federal Intermediate Credit Bank of Columbia, S.C. v. Mitchell, 277 U.S. 213, 216, 48 S.Ct. 449, 72 L.Ed. 854 (1928), that the 1911 Act "was in substance a reenactment of the earlier provisions in respect of ... jurisdiction." See also Hermann v. Edwards, 238 U.S. 107, 117–18, 35 S.Ct. 839, 59 L.Ed. 1224 (1915). See for all legal argument re diversity jurisdiction:  Martinez v. Wells Fargo Bank - -- F.Supp.2d ----, 2013 WL 2237879 (N.D.Cal.).

**6.** **Plaintiff stated facts citing that Wells Fargo Principal Place of of**

**Business is California**

Plaintiff states in its opposition to the Motion to dismiss his grounds for why

Wells Fargo's principal place of business is California.  "According to Wells

Fargo's own website, its corporate office is located at 420 Montgomery Street, San

Francisco, California 94104." (Dkt. 9 p. 4.)  Furthermore, "As proof of its

California citizenship, Defendant has registered with the Securities Exchange

Commission and represents to that agency that its main office is in San Francisco.

On January 24, 2011, Defendants filed a " 13F Notice" with the Securities and

Exchange Commission (SEC); the bank executive who signed the report was

Catherine H. Wong, Accounting Manager, in San Francisco, California; a San

Francisco phone number was provided to the SEC to contact Ms. Wong.[1]

Additionally, even a limited review of Defendant's SEC filings since 2001 reveals

that, as a matter of standard business practice since at least 2001 , Defendant's SEC

reports have consistently been signed and filed by an executive in its San Francisco

main office and the San Francisco office has often been listed as the address on the

SEC 13-F Report. (See, e.g., Defendant Wells Fargo's 11/03/06, 5/ 12/06, 4/30/01 ,

2/20/01 SEC 13-F Reports).  Of particular note is Defendant's self-composed

description of its "properties" on page 13 of its SEC 10-K annual report for 2009

---

[1] http://www.secinfo.com/d2784.gBs.htm#l stPage

(filed February 26, 2010): "We own our own corporate headquarters building in San Francisco, California. We also own administrative facilities in . . . Sioux Falls, South Dakota.[2] "

This should be used and seen as Wells Fargo's admission to a principal place of business in California and thus citizenship if California for diversity jurisdiction purposes.

## C.    THE DISTRICT COURT ERRED IN FINDING "HOLA" PREEMPTS

There are "two cornerstones" of preemption jurisprudence. Wyeth v. Levine, 555 U.S. 555, 129 S.Ct. 1187, 1194, 173 L.Ed.2d 51 (2009). "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.' " Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Second, "[i]n all preemption cases, and particularly in those in which Congress has 'legislated ... in a field which the States have traditionally occupied,' ... we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " Id. at 1194–95 (quoting Lohr, 518 U.S. at 485, 116 S.Ct. 2240).

---

2 Excerpt From Defendant's 2/26/10 SEC 10-K Annual Report (available at https://www.wellsfargo.com/downloads/pdf/ invest_relations/2009_1_Ok.pdf)

Despite Wells Fargo's contention that federal law preempts Plaintiff's causes of action, 12 C.F.R.§ 560.2(c), specifically states the laws HOLA does not preempt, "State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; (3) Homestead laws specified in 12 U.S.C. 1462a(f); (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." 12 C.F.R. § 560.2(c). Plaintiff only alleges facts relating to laws which are specifically not inconsistent with federal law, per statute, namely facts and laws relating to (1) Defendants ' involvement in enforcement of a void and unenforceable contract, (2) Defendants' involvement in tortious conduct in that it ratified predatory lending practices contrary to the California Codes and facilitating fraud, and (3) Defendant's attempts at enforcing rights to collect a debt that was void and unenforceable. In addition, "No federal statute considers whether provisions in contracts between banks and their customers may exact unreasonable or unconscionable fees." Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 933. Defendant's preemption argument, consequently, is essentially an argument that even though

27

the federal government has largely declined to regulate this area, Congress has nevertheless decided to preclude state regulation.

As explained in National State Bank, Elizabeth, N.J. v. Long, 630 F.2d 981 , "[w]hatever may be the history of federal-state relations in other fields, regulation of banking has been one of dual control since the passage of the first National Bank Act in 1863 .... In only a few instances has Congress explicitly preempted state regulation of national banks. More commonly, it has been left to the courts to delineate the proper boundaries of federal and state supervision. [~] The judicial test has been a tolerant one. [National banks'] rights to contract, collect debts, and acquire and transfer property are all based on state law." Thus the rule is that state laws apply, "the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States or frustrate the purpose for which the national banks were created, or impair their efficiency to discharge [their] duties .... " (McClellan v. Chipman (1896) 164 U.S. 347, 357 [41 L.Ed. 461 , 465, 17 S.Ct. 85].) Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 938.

Appellant's claims are rooted in California's laws that protect from fraud and unfair practices, in essence consumer protection laws which fall in an area that is traditionally within the state's police powers to protect its own citizens. "Because consumer protection law is a field traditionally regulated by the states, compelling

28

evidence of an intention to preempt is required in this area." Gen. Motors Corp. v. Abrams, 897 F.2d 34, 41–42 (2d Cir.1990).  Aguayo v. U.S. Bank, 653 F.3d 912, 917 (9th Cir. 2011).

Although Defendant claims that this case is analogous to Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001 (9th Cir.2008), Appellant's claims clearly are square with Aguayo v. U.S. Bank, in that they all relate to the one category of state law included in the list generally not preempted was 'debt collection.' And the 'right to collect debts.' 653 F.3d at 923.  A lender has a duty not to misrepresent material facts and to refrain from unfair and deceptive practices, and that HOLA does not preempt these duties and contractual principles. Moreover, the state law rules were not directed at regulating federal savings institutions and any effect on bank lending activities should be seen as incidental, not material, as they are not immune from breaking the states laws while conducting business in such territory.  See Gibson v. World Savings, 103 CaLApp.4th 1291 (2002).

All Plaintiff's causes of action are not exempt.

## VII.    CONCLUSION AND RELIEF SOUGHT:

Based upon the record and argument, Appellant respectfully requests the Court of Appeal find that Defendant Wells Fargo is a citizen of both its state of association and its principal place of business.  As its principal place of business is in California, diversity jurisdiction is lacking and the Court should instruct the

district court to vacate its Judgment and Order of Dismissal of Plaintiff's claims and remand the matter to Orange County Superior Court.

If diversity jurisdiction is seen to exist, and thus the district court had/has jurisdiction, Appellant respectfully requests the Court of Appeal find that all Plaintiff's six causes of action are not preempted by HOLA and may proceed past a motion to dismiss under these circumstances and be remand to the district court for further proceedings.

## VIII.     STATEMENT OF RELATED CASES:

Plaintiff knows of no other cases in this Court that are deemed related.

Dated: August 21, 2013                                    Respectfully submitted,

Rodriguez Law Group, Inc.

By: __/s/ Patricia Rodriguez_____
        Patricia Rodriguez, Esq.
        George M. Hill, Esq.
        Attorneys for Appellant